UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

JAMAL WILLIAMS et al.,                    :

                Plaintiffs,      :

      - against -                        :

THE CITY OF NEW YORK,                     :

                Defendant.       :

- - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/4/10
```

**OPINION**

08 Civ. 9727 (DC)

**APPEARANCES:**    THE LAW OFFICES OF STEVEN A. MORELLI, P.C.
        Attorney for Plaintiffs
           By: Steven Anthony Morelli, Esq.
               Anthony Christopher Giordano, Esq.
        One Old Country Road
        Carle Place, NY  11514

        MICHAEL CARDOZO, ESQ.
        Corporation Counsel of the City of New York
          Attorney for Defendant
           By:  Eamonn F. Foley, Esq.
               Assistant Corporation Counsel
        New York City Law Department
        100 Church Street
        New York, NY  10007

**CHIN, District Judge**

        Plaintiffs are black and Hispanic employees in the Deputy Sheriff's Office of the Department of Finance ("DOF") of the City of New York (the "City").  Plaintiffs contend that the City discriminated and retaliated against them in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL").

        The City moves to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. For the reasons that follow, the City's motion is granted and the amended complaint is dismissed.

## BACKGROUND

### A. Facts

For purposes of this decision, I accept the allegations of the amended complaint as true.

Between 1991 and 1998, plaintiffs were hired by the DOF as provisional employees. (Am. Compl. ¶¶ 19-27). Plaintiffs were told that, once they passed the civil service exam, they would transition from provisional employees to permanent civil servants, which in turn would make them eligible for promotion. (Id. ¶¶ 2, 28). In approximately 2000, each plaintiff passed the civil service exam (id. ¶ 29); none, however, were chosen to become permanent civil servants (id. ¶ 30). Plaintiffs allege, upon information and belief, that white provisional employees were given merit promotions, and that some white employees were appointed Sergeant while still on the civil service list awaiting permanent status. (Id. ¶¶ 32-33).

In approximately 2004 or 2005, plaintiffs took the City Deputy Sheriff exam, for which they each received a score of 100%. (Id. ¶ 34). Plaintiffs remained provisional employees until October of 2007, when they each received a letter from the DOF's director of personnel stating that they had been appointed Deputy Sheriffs, effective October 9, 2007. (Id. ¶¶ 34-35).[1]

---

[1]      Plaintiffs do not allege that the period between approximately 2004 or 2005 (when they first became eligible for

-2-

The letter further stated that the appointment was subject to a three-month probationary period.  (Id.).  Plaintiffs completed the three-month probationary term without incident.  (Id. ¶ 37).

After plaintiffs' appointment to the Deputy Sheriff rank, two City employees complained to the DOF about plaintiffs because of their race.  (Id. ¶ 38).  Plaintiffs assert that, as a result of these complaints, the City returned the plaintiffs to provisional status via a February 7, 2008, letter, stating that plaintiffs' probationary period was not three months, but rather fifteen months.  (Id. ¶¶ 38-39).[2]  Plaintiffs allege upon information and belief that similarly situated white employees were not subject to the same probationary period.  (Id. ¶ 41).  Further, at some point after plaintiffs received the February 7, 2008, letter, two deputies made statements to the effect that minorities would not receive merit promotions or take promotional exams.  (Id.).

After receiving the February 7, 2008, letter, plaintiffs complained about the alleged discrimination to their superiors, the Human Resources Department, and the union.  (Id. ¶ 4).  Plaintiffs allege in general terms that, after making these complaints, they were retaliated against.  (Id.).

_____

the position of Deputy Sheriff) and 2007 (when they were appointed Deputy Sheriffs) constituted unreasonable delay.

[2]   Plaintiffs allege in their amended complaint that the "demotion" letter was dated February 7, 2007.  (Am. Comp. ¶ 38).  The letter, however, is in fact dated February 7, 2008.  (Am. Compl. Ex. B).

-3-

Plaintiffs further allege that defendant extended overtime opportunities to white employees that, upon information and belief, it did not extend to plaintiffs.  (Id. ¶¶ 43-45).

## B.  **Procedural History**

Plaintiffs filed their complaint on November 10, 2008. Plaintiffs amended their complaint on April 29, 2009.

The amended complaint asserts the following claims: (1) a 42 U.S.C. § 1983 claim that plaintiffs' constitutional rights to due process and equal protection under the Fifth and Fourteenth Amendments were violated when plaintiffs were denied promotion for an undue period of time, demoted, denied overtime opportunities, and subjected to racist comments; (2) a 42 U.S.C. § 1983 claim that plaintiffs' First Amendment rights were violated when defendant retaliated against plaintiffs in response to their complaints of discrimination; (3) a 42 U.S.C. § 1981 claim for discrimination based on plaintiffs' race; and (4) analogous discrimination and retaliation claims under the NYSHRL and NYCHRL.

This motion to dismiss followed.

### DISCUSSION

First, I discuss the legal standards applicable to Rule 12(b)(6) motions to dismiss.  Second, I discuss the City's statute of limitations defense, and conclude that only three claims are timely.  Third, I discuss those three claims under each of the statutes relied upon by plaintiffs:  § 1983; § 1981; and the state and city discrimination laws.

-4-

## A. Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Iqbal set out a "two-pronged" approach for courts considering a motion to dismiss. Id. at 1950.

First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. See id.; see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). Legal conclusions must be supported by factual allegations. Iqbal, 129 S. Ct. at 1949. Pleadings that are "no more than conclusions are not entitled to the assumption of truth." Id. at 1950.

Second, the court determines whether the allegations "plausibly give rise to an entitlement to relief." Id. A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

-5-

## B. **Statute of Limitations**

The statute of limitations governing § 1981 claims is four years. Jones v. W. Suffolk Boces, No. 03 Civ. 3252, 2008 U.S. Dist. LEXIS 13077, at *26 (E.D.N.Y. Feb. 20, 2008) (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004)). The statute of limitations governing § 1983 claims is three years from the filing of the complaint, Owens v. Okure, 488 U.S. 235, 251 (1989), as is the statute of limitations governing NYCHRL and NYSHRL law claims. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 214(2) (McKinney 2003)); Hill v. Citibank Corp., 312 F. Supp. 2d 464, 474 (S.D.N.Y. 2004).

Under Rule 15 of the Federal Rules of Civil Procedure, an amended pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." Fed. R. Civ. P. 15.

Under Rule 15, plaintiffs' amended complaint, filed April 29, 2009, relates back to plaintiffs' original complaint, filed November 10, 2008. Id. Pursuant to the limitations periods outlined above, plaintiffs may challenge conduct that occurred after November 10, 2004, in making their § 1981 claim, and conduct that occurred after November 10, 2005, in making their § 1983, NYCHRL, and NYSHRL claims.

-6-

Plaintiffs assert that the City's challenged conduct
that occurred prior to the limitations periods was part of a
continuous policy of discrimination that persisted into the
statutory period, and thus those claims should be preserved.  All
of the conduct alleged to have occurred before the relevant
limitations periods, however, pertains to the City's failure to
promote plaintiffs from the civil servant list.  (Am. Compl. ¶¶
28-33).  The Supreme Court has held that a failure to promote is
a discrete act, not a continuing violation.  Amtrak v. Morgan,
536 U.S. 101, 117-18 (2002).  Consequently, plaintiffs may not
rely on conduct that occurred prior to the relevant limitations
period as the basis for their claims, though such conduct, if
relevant, may be considered as background evidence.  Id. at 113.

Three of plaintiffs' allegations regarding the City's
conduct survive the limitations periods outlined above:
(1) on February 7, 2008, the City "demoted" plaintiffs from
permanent status to probationary status when subjecting them to a
fifteen-month probationary period while similarly situated white
employees were not demoted and received shorter probationary
terms (Am. Compl. ¶¶ 34-39); (2) in about 2007 or 2008, the City
withheld overtime opportunities from plaintiffs and offered them
to similarly situated white employees (id. ¶¶ 43-45); and (3) at
some point after February 7, 2008, certain deputies made racist
comments suggesting that minority employees would not be promoted
because of their race (id. ¶¶ 40, 42).

-7-

C. **Plaintiffs' § 1983 Claims**

        To prevail on a claim under § 1983, a plaintiff must
show that (1) defendant acted under color of state law, and (2)
defendant's actions deprived plaintiff of his or her
constitutional rights or privileges.  42 U.S.C. § 1983; see
Knight v. City of New York, 303 F. Supp. 2d 485, 501 (S.D.N.Y.
2004) (citing Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir.
1994)).  Usually, a § 1983 claim is asserted against an
individual acting under color of law.  To recover against a
municipality, a plaintiff must establish a basis for municipal
liability.

        1.  **Municipal Liability**

        When suing a municipality under § 1983, a plaintiff
faces the additional challenge of proving that the municipality
is liable for the constitutional violations allegedly committed
by its employees and officials.  Before proceeding to examine the
merits of plaintiffs' § 1983 claims, I will first determine
whether any of the three central allegations that survive the
limitations period may be attributed to the City.  For the
reasons set forth below, I conclude that plaintiffs have
sufficiently alleged municipal liability only as to the demotion
claim and not as to the overtime and racist remarks claims, but I
will discuss these claims on the merits.

        a.  **Applicable Law**

        A municipality cannot be held liable under § 1983
solely on a theory of respondeat superior.  Monell v. Dep't of
Soc. Servs., 436 U.S. 658 (1978).  A municipality may, however,

be liable under § 1983 when the alleged deprivation of
constitutional rights is the result of action pursuant to an
official municipal policy, id. at 690-91, or the municipality
exhibits deliberate indifference to the possibility of such a
constitutional violation. Vann v. City of New York, 72 F.3d
1040, 1049 (2d Cir. 1995).

### i. Official Policies

"[T]he acts and pronouncements of a single official may
constitute policy for which the municipality is liable if that
official is the 'final policymaker' in the area at issue." Chin
v. N.Y. City Hous. Auth., 575 F. Supp. 2d 554, 561-62 (S.D.N.Y.
2008) (citing St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)
(plurality opinion), and Jeffes v. Barnes, 208 F.3d 49, 57 (2d
Cir. 2000)). In determining whether the official had final
policymaking authority in the particular area involved, courts
consider "state and local positive law, as well as custom or
usage having the force of law." Jeffes, 208 F.3d at 57 (citation
omitted).

"The critical characteristic of final policymakers when
employment is at issue is whether the municipal official has
authority to formulate the rules governing personnel decisions
rather than authority to make decisions pursuant to those
rules -- e.g., the hiring and firing of subordinates." Chin, 575
F. Supp. 2d at 562-63 (citing Pembaur v. City of Cincinnati, 475
U.S. 469, 483 n.12 (1986) (plurality opinion) (noting that the
discretion to hire and fire municipal employees does not entail

-9-

being the final policymaker for employment matters), and Hurdle
v. Bd. of Educ., 113 Fed. App'x 423, 425-26 (2d Cir. 2004)).

A subordinate officer, although not a final
policymaker, may expose a municipality to liability if a
policymaker ordered or ratified the subordinate's actions.
Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir.
2004) (citing Weber v. Dell, 804 F.2d 796, 803 (2d Cir. 1986)).

## ii. **Deliberate Indifference**

When evaluating a claim of deliberate indifference, the
court must determine "whether the facts suggest that the
policymaker's inaction was the result of a 'conscious choice'
rather than mere negligence." Id. at 128 (quoting City of Canton
v. Harris, 489 U.S. 378, 389 (1989)). Accordingly, plaintiffs
must show that a policy-making official had notice "of a
potentially serious problem of unconstitutional conduct, such
that the need for corrective action or supervision was obvious
and the policymaker's failure to investigate or rectify the
situation evidences deliberate indifference." Id. (internal
citations and quotation marks omitted).

Deliberate indifference may also be inferred where a
municipality disregards "the risk that its employees will
unconstitutionally apply its policies without more training."
Id. at 130. In this context, plaintiffs must "identify a
specific deficiency in the city's training program and establish
that that deficiency is 'closely related to the ultimate injury,'
such that it 'actually caused' the constitutional deprivation."

-10-

Id. at 129 (quoting City of Canton, 489 U.S. at 391).   In
Amnesty, the Second Circuit noted a less stringent pleading
standard for failure to train claims because "[i]t is unlikely
that a plaintiff would have information about the city's training
programs or about the cause of the misconduct at the pleading
stage."   Id. at 129 n.10.

### b.  Application

       I evaluate each of the three surviving claims to
determine whether plaintiffs have pled a basis for municipal
liability.

### i.  Demotion Claim

       Plaintiffs claim they were "demoted" from permanent
status to probationary status upon receipt of the February 7,
2008, letter notifying them that their probationary period was
not three months, but rather fifteen months.   (Am. Compl. ¶ 38;
Am. Compl. Ex. A).   The February 7, 2008, letter bears the
signature of Richard A. Reichard, Director of Personnel.   (Am.
Compl. Ex. B).   The letter suggests that Reichard was acting
pursuant to a mandate from the Department of Citywide
Administrative Services ("CAS").   (Id.).   Although it does not
appear that Reichard is a policy-making official, a subordinate
officer may expose a municipality to liability if a policymaker
ordered or ratified the subordinate's actions.   Amnesty, 361 F.3d
at 126.   Based on the letter's indication that Reichard was
acting pursuant to an official policy, as handed down by CAS, the
Court can reasonably infer that the fifteen-month probationary

-11-

period is attributable to the City, and thus the Court will consider it when evaluating plaintiffs' § 1983 claims.

Plaintiffs further offer the conclusory allegation that similarly situated white deputies were subject to shorter probationary terms and were not "demoted." (Am. Compl. ¶¶ 36, 41). Plaintiffs allege no facts connecting this discriminatory treatment to the City's official policies or policymakers and, accordingly, I will not consider this allegation when evaluating plaintiffs' § 1983 claims.[3]

### ii. **Withholding of Overtime Opportunities**

Plaintiffs claim they were denied overtime opportunities because of their race. (Am. Compl. ¶¶ 43-47). In support of this claim, plaintiffs name seven white employees who they believe were paid approximately $16,000.00 in overtime pay and allege, upon information and belief, that plaintiffs were not offered the same opportunities. Even if plaintiffs' inexplicably

---

[3]    The City would be subject to a discrimination claim as an employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, see, e.g., Adorno v. Port Auth. of N.Y. & N.J., 258 F.R.D. 217 (S.D.N.Y. 2009), but plaintiffs have not sued under Title VII. In other words, in the unusual posture of this case, where plaintiffs have not sued under Title VII but under federal statutes that require them to prove municipal liability under Monell, plaintiffs fail to state a claim, even assuming white deputies were subject to shorter probationary periods. See Patterson v. County of Oneida, 375 F.3d 206 (2d Cir. 2004) (noting that Title VII discrimination claims differ significantly from those under § 1983 and § 1981 because, "when the defendant sued for discrimination under § 1981 or § 1983 is a municipality[,] . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom"); see also Brown v. Baldwin Union Free Sch. Dist., 603 F. Supp. 2d 509, 515 (E.D.N.Y. 2009).

vague assertion, upon information and belief, that they were denied overtime opportunities were sufficient to withstand the 12(b)(6) standard, plaintiffs fail to allege any facts showing that they were denied overtime opportunities because of any official City policy or policymaker. In other words, even assuming someone denied plaintiffs overtime opportunities, the City is not liable under § 1983 unless a basis for <u>Monell</u> liability exists.

Plaintiffs' argument for municipal liability on a theory of deliberate indifference also fails as they do not allege that a policymaker had notice of the alleged discriminatory conduct such that the need for corrective action or supervision was obvious. <u>Amnesty</u>, 361 F.3d at 128. Although plaintiffs note that they complained to "their superiors, the Human Resources Department, and the union" (Am. Compl. ¶ 4), they do not specify the timing of those complaints, their content, or whether they addressed the withholding of overtime opportunities. Further, plaintiffs offer no facts suggesting that any of the people or departments to whom they complained were "final policymakers in the area at issue." <u>Chin</u>, 575 F. Supp. 2d at 561. Common sense suggests that plaintiffs' immediate superiors, Human Resources, and the union did not have the authority to "formulate the rules governing personnel decisions" but rather the authority to "make decisions pursuant to those rules." <u>Id.</u> at 562-63 (citations omitted).

Finally, plaintiffs' argument for municipal liability on a failure to train theory similarly fails. Although the amended complaint once mentions the City's inadequate training program (Am. Compl. ¶ 56(b)), plaintiffs do not set forth a single factual allegation relating to the program or suggesting that the City's policymakers deliberately ignored "the risk that its employees would unconstitutionally apply its policies without more training." Amnesty, 361 F.3d at 130. Such bare-bones, conclusory allegations cannot survive even the reduced pleading standard for failure to train claims articulated in Amnesty. Id. at 129 n.10.

For all of the reasons stated above, I hold that plaintiffs fail to allege plausible municipal liability on the purported withholding of overtime opportunities. Consequently, I will not consider this allegation when evaluating plaintiffs' § 1983 claims.

### iii. **Racist Remarks**

For the reasons stated above, plaintiffs similarly fail to allege municipal liability regarding the deputies' racist remarks. Indeed, plaintiffs allege only that two deputies made remarks to the effect that minorities would not be promoted. (Am. Compl. ¶ 40). Plaintiffs do not allege a single fact connecting these remarks to an official policy or policymaker; demonstrating that the City had notice of these remarks; or linking these remarks to a failure in the City's training program. See Amnesty, 361 F.3d at 128-30. Accordingly, for the reasons set forth above, plaintiffs' allegations of racist

-14-

remarks will not be considered in the context of plaintiffs' §
1983 claims.

Thus, plaintiffs have sufficiently alleged municipal
liability only as to the demotion claim.  Accordingly, I will
only consider that claim when evaluating whether the City acted
under color of law to deprive plaintiffs of their rights,
privileges, and immunities in violation of § 1983.

### 2.  Color of Law

Section 1983 "provides a plaintiff a vehicle for the
redress of violations of his [or her] constitutional rights when
such violations are carried out by persons acting under color of
state law." Galland v. Marqules, No. 05 Civ. 5639, 2005 U.S.
Dist. LEXIS 17125, at *5 (S.D.N.Y. Aug. 17, 2005); see 42 U.S.C.
§ 1983.  "'In cases under § 1983, "under color" of law has
consistently been treated as the same thing as the "state action"
required under the Fourteenth Amendment.'"  Rendell-Baker v.
Kohn, 457 U.S. 830, 838 (1982) (quoting United States v. Price,
383 U.S. 787, 794 n.7 (1966)).

New York City is a state actor.  Monell, 436 U.S. at
658-59 (holding that local governments were intended to be
included as state actors under § 1983).  There is no question
that the City acted under color of law.

### 3.  Deprivation of Rights, Privileges, and Immunities

#### a.  Plaintiffs' Due Process Claim

To state a § 1983 claim based on an alleged violation
of due process, a plaintiff must allege that he or she

-15-

(1) possessed a liberty or property interest protected by the
Constitution or federal statutes and (2) was deprived of that
liberty or property interest without due process of law.
Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)
(citing Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995)).

### i.   **Property Interests**

Property interests are not created by the Constitution,
but "'stem from an independent source such as state law -- rules
or understandings that secure certain benefits and that support
claims of entitlement to those benefits.'"  Ciambriello, 292 F.3d
at 313 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577
(1972)).  In this context, it is important to note that "[w]hen a
county civil service commission, possessing the requisite
authority, promulgates a rule establishing the length of a
probationary term of service, that rule has the effect of law."
Higgins v. La Paglia, 281 A.D.2d 679, 679 (N.Y. App. Div. 3d
Dep't 2001).  Further, New York courts have found that rules set
by civil service commissions regarding probationary terms take
precedence over state documents asserting contrary terms,
provided there is no evidence that the commission delegated its
rule-making authority.  See id. at 679-80; Colao v. Village of
Ellenville, 223 A.D.2d 792, 793 (N.Y. App. Div. 3d Dep't 1996).

Here, any interest in the Deputy Sheriff position is
governed by the terms set by the commissioner of CAS, who has
discretion under the Personnel Rules and Regulations of the City
of New York to determine probationary periods for civil service

-16-

employees in plaintiffs' class.  55 R.C.N.Y. App. A, § II, R.
5.2.1(a) (2008).  CAS defines the Deputy City Sheriff
probationary period as twenty-four months with a potential nine-
month reduction for time served as a provisional employee.
Notice of Examination, City of New York, Dep't of Citywide Admin.
Servs., Notice of Examination: Deputy City Sheriff 4 (Apr. 19,
2006) ("The probationary period for this title is 24 months");
Personnel Services Bulletin, Dep't of Citywide Admin. Servs. ("If
immediately prior to a permanent appointment to a title, an
employee has served in that title . . . on a provisional basis,
the employee's probationary period shall be reduced by an amount
equal to the time . . . served . . . but in no case shall such
probationary period be reduced by more than nine months.").  This
CAS rule is not trumped by the October 10, 2007, letter, which
bears no indication that it was sent at the direction of CAS and
states an incorrect probationary term.  Higgins, 281 A.D.2d at
679; Colao, 223 A.D.2d at 793.

        As the CAS rule creates any property interest in the
Deputy Sheriff position by setting its terms, plaintiffs cannot
claim a property interest counter to the rule.  See Brunell v.
Clinton County, No. 08 Civ. 3831, 2009 U.S. App. LEXIS 12195, at
**3-5 (2d Cir. June 8, 2009) (citing Ciambriello, 292 F.3d at
313) (dismissing due process claim because municipal employee did
not have a "legitimate claim of entitlement" to the Election
Commissioner position when a New York State Law indicated he was
not eligible).  Thus, plaintiffs have no property interest in the

-17-

permanent position of Deputy Sheriff before the expiration of their fifteen-month probationary term.

### ii. **Liberty Interests**

In the employment context, even discharge, by itself, does not deprive an employee of liberty. See Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996). Special aggravating circumstances, such as making charges against an employee that might seriously damage his standing in his community or prevent him from taking advantage of future employment opportunities, are necessary to implicate a liberty interest. Roth, 408 U.S. at 573-74; Donato, 96 F.3d at 630.

Plaintiffs claim that the City infringed upon their liberty interest in "their right to earn and pursue a living." (Am. Compl. ¶ 52). Plaintiffs fail, however, to allege any "special aggravating circumstances" that might implicate a liberty interest. Donato, 96 F.3d at 630. Indeed, plaintiffs fail to explain how their interest in pursuing a living was compromised at all as they were never deprived of employment. Accordingly, plaintiffs' claim is dismissed.

Plaintiffs additionally mention a liberty interest in "their pension and medical benefits, and [in] their own autonomy." (Am. Compl. ¶ 52). Plaintiffs have not, however, pled a single fact relating to this alleged deprivation. Thus, as plaintiffs have not pled facts that might "plausibly give rise to an entitlement to relief," Iqbal, 129 S. Ct. at 1950, these claims are dismissed.

-18-

### b. Plaintiffs' Equal Protection Claim

#### i. Applicable Law

"'To state a claim for an equal protection violation, [a plaintiff] must allege that a government actor intentionally discriminated against [him or her] on the basis of race, national origin or gender.'" Williams v. N.Y. City Hous. Auth. & Local 237, I.B.T., No. 05 Civ. 2750, 2007 U.S. Dist. LEXIS 91134, at *21 (S.D.N.Y. Nov. 30, 2007) (quoting Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999)), aff'd, No. 07 Civ. 5624, 2009 U.S. App. LEXIS 13538 (2d Cir. June 24, 2009). "Once it is established that action was taken under color of law, 'the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII.'" Id. at **21-22 (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)).

Under Title VII, plaintiffs claiming discrimination must prove adverse employment action. Id. at *22 (internal citations omitted). A plaintiff suffers adverse employment action if he or she "endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotations and citation omitted). "Adverse employment action results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career and must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Williams, 2007 U.S. Dist. LEXIS 91134, at *22 (citing Galabya, 202 F.3d at 640-41) (internal quotation marks omitted).

### ii.  Application

Plaintiffs fail to allege that they suffered adverse employment action.  As noted above, as a matter of law, plaintiffs' probationary period was at all times fifteen months. See Higgins, 281 A.D.2d at 679-80.  Consequently, as a matter of law, plaintiffs' careers were not set back and their responsibilities were not altered.  Thus, plaintiffs cannot be said to have suffered adverse employment action.  Williams, 2007 U.S. Dist. LEXIS 91134, at *22.  Accordingly, plaintiffs' equal protection claim is dismissed.

### c.  Plaintiffs' First Amendment Claim

### i.  Applicable Law

To establish a First Amendment violation, a plaintiff claiming retaliation must show that (1) the speech at issue was protected; (2) he or she suffered an adverse employment action; and (3) there was a causal connection between the protected speech and the adverse employment action.  Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006); see 42 U.S.C. § 1981.  "In the context of a First Amendment retaliation claim . . . 'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'"  Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001)).

## ii.  Application

Plaintiffs allege that, after complaining to their superiors, Human Resources, and the union about the City's discriminatory practices, they were retaliated against.  (Am. Compl. ¶ 4).  I need not address whether the speech in question was protected because plaintiffs fail to plead adverse employment action attributable to the City.  The only adverse employment action alleged to have occurred after plaintiffs complained about the alleged discriminatory treatment is the denial of overtime opportunities.  (Id.; Pls. Opp'n Mem. 8).  As noted above, plaintiffs fail to establish municipal liability for this allegation, and thus their First Amendment claim is dismissed.

## D.  Plaintiffs' 42 U.S.C. § 1981 Claim

Claims of discrimination under § 1981 are evaluated using the same analytic framework as Title VII actions.  Paulino v. N.Y. Printing Pressman's Union, Local Two, 301 Fed. App'x 34, 36 (2d Cir.2008).  Further, plaintiffs bringing suit under § 1981 must pass the same test for municipal liability articulated above for § 1983 claims.  Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); Rouse v. City of New York, No. 08 Civ. 7419, 2009 U.S. Dist. LEXIS 46718, at **17-18 (S.D.N.Y. June 2, 2009).

Plaintiffs have sufficiently alleged Monell liability only as to their "demotion" claim.  The demotion claim under § 1981, however, mirrors plaintiffs' § 1983 equal protection claim, which was analyzed above under a Title VII framework and dismissed because plaintiffs fail to allege adverse employment action.  Accordingly, plaintiffs' § 1981 claim is dismissed.

-21-

**E.   Plaintiffs' NYCHRL and NYSHRL Claims**

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  With the dismissal of plaintiffs' federal claims, there remains no independent jurisdictional basis for the state law claims.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims"); Lynch v. Suffolk County Police Dep't, Inc., No. 07-3684-cv, 2009 U.S. App. LEXIS 22489, at *10 (2d Cir. Oct. 14, 2009). Accordingly, I decline to exercise supplemental jurisdiction over plaintiffs' state law claims and dismiss them as well.

**CONCLUSION**

For the foregoing reasons, the City's 12(b)(6) motion is granted.  The Clerk of the Court shall enter judgment, dismissing the amended complaint, with prejudice as to the federal claims and without prejudice as to the state claims.

SO ORDERED.

Dated:     New York, New York
           March 4, 2010

DENNY CHIN
United States District Judge